IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No 14-cv-00367-RBJ

GAYLE DUNN,

    Plaintiffs,

v.

ERIC K. SHINSEKI, Secretary, Department of Veterans Affairs,

    Defendant.

---

## ORDER

---

Defendant's Motion to Dismiss for Lack of Jurisdiction under Fed. R. Civ. P. 12(b)(1) and for Summary Judgment under Rule 56(a) [ECF No. 33] is presently before the Court. For the reasons laid out below, the motion is granted.

## I. FACTS

The plaintiff, Gayle Dunn, is a former employee of the Department of Veteran Affairs ("the Agency"). ECF No. 33-1, Ex. A, Dunn Dep. Transcript, at 6:1–9. She began working for the Agency in 2004 as a pharmacy technician, and then in 2007 became a Customer Service Representative ("CSR") in the call center. *Id.* at 6:1–18. In 2008, Ms. Dunn applied for a job as a pharmacy specialist, but was not selected for the position. *Id.* at 10:11–14. As a result of not being offered this position, she filed a lawsuit against the Agency in November of 2010 alleging that she was discriminated against on the basis of her race. *Id.* at 10:15–19, 11:15–19. The case

was dismissed on summary judgment on May 31, 2012. *Dunn v. Shinseki*, No. 10-CV-02754-PAB-MEH, 2012 WL 1963591 (D. Colo. May 31, 2012).

During the time that she was prosecuting her lawsuit, Ms. Dunn was also struggling in her position at the call center. As a CSR, the plaintiff answered phone calls from veterans and their families and discussed VA benefits with them. ECF No. 34-7, Ex. H, Performance Appraisal 2011-2012. Her job performance was evaluated on a number of "elements," including a "Customer Services" quality metric that measured how courteous she was during calls and how accurate the information she provided to callers was. *Id.* at 1. This "Customer Services" metric, which was measured on a 100-point scale, was based on her performance during randomly selected calls that were monitored and scored by the Agency's quality division. *Id.*; ECF No. 34-1, Ex. B, Ellen Stewart Dep. Transcript, at 16:2–8. To maintain a satisfactory score of 95, a CSR representative had to communicate with customers in a courteous and professional manner, provide accurate insurance information, and minimize dead air time. ECF No. 34-1, Ex. B, Ellen Stewart Dep. Transcript, at 17:4–12. A score below 95 was considered to be a failing score. *Id.* at 20:6–16; ECF No. 34-7, Ex. H, Performance Appraisal 2011-2012, at 1.

Ms. Dunn's "Customer Services" score fell below 95 for the period from April 1, 2011 to June 30, 2011. ECF No. 34-8, Ex. I, PIP Memorandum September 1, 2011, at 1. According to a letter sent to Ms. Dunn informing her of her failing performance, her average accuracy score for that period was 94.67%. *Id.* at 4. The plaintiff was thus placed on a "Performance Improvement Plan," or "PIP," which required regularly meeting with a supervisor over a 90-day period beginning on September 1, 2011. *Id.* at 1, 3–4. The Agency determined that Ms. Dunn had successfully completed the PIP on November 17, 2011, noting that she had "demonstrated an

acceptable level of performance" on the "Customer Services" metric. ECF No. 34-11, Ex. L, PIP Completion Letter November 17, 2011. In the letter notifying her that she was no longer on the PIP, however, the Agency made clear that "[her] performance in this critical element must be sustained at the successful level for a period of one year from the beginning of [the] PIP on August 16, 2011."[1] *Id.* It went on to warn that should her performance fall below the "successful" level during the one-year period, she might be "reduced in grade, reassigned, or removed without being afforded an opportunity to improve." *Id.*

Unfortunately for Ms. Dunn, her performance again dropped below the acceptable level in April and June of 2012, and her "90-day average" for April, May, and June of 2012 was 94.7%. ECF No. 34-12, Ex. M, Gayle Dunn Failing Scores Memorandum April Through June 2012. It was the Agency's policy that if an employee who had been on a PIP failed to maintain the required score for the metric that was the subject of the PIP during the one-year probationary period, that employee "would not be placed on another PIP, or given another opportunity to improve . . . A CSR could not have two PIPs for the same critical element in a one-year period." ECF No. 34-4, Ex. E, Declaration of Ellen Stewart, at ¶ 11. Because of the plaintiff's failing score for the April, May, and June period, her supervisor, Ellen Stewart, submitted an evidence packet to Human Resources for Ms. Dunn's termination. *Id.* at ¶ 16. The packet included memos about Ms. Dunn's PIP and records of her critical elements scores. According to Ms. Stewart, the plaintiff's earlier lawsuit was "not a factor whatsoever in [her] submitting the packet for [the plaintiff's] termination. [She] relied exclusively on her failing job performance in that decision." *Id.* at ¶ 17.

---

[1] It is unclear whether the PIP actually began on August 16, 2011 or September 1, 2011. However, the exact start date is immaterial here.

The Chief Operating Officer of the VA's Denver office, Cynthia Kindred, was the deciding management official in Ms. Dunn's termination. ECF No. 34-5, Ex. F, Declaration of Cynthia Kindred, at ¶ 9. Ms. Kindred received Ms. Dunn's proposed termination evidence packet in mid-August of 2012 and began contemplating the plaintiff's termination at that time. *Id.* at ¶ 10. After reviewing the file, she felt the termination was "justified" in light of Ms. Dunn's failure to meet the score required for the "critical element" that had been the basis of her PIP. *Id.* at ¶¶ 11, 13. The plaintiff was informed of her potential termination on August 13, 2012 and then received a Notice of Termination on November 20, 2012. ECF No. 34-13, Ex. N, Notice of Proposed Termination August 13, 2012; ECF No. 34-15, Ex. P, Termination Notice November 30, 2012. Her termination became effective on December 7, 2012. *Id.*

Following her termination, Ms. Dunn contacted an EEO counselor on December 26, 2012 and submitted a formal EEO complaint on January 29, 2013. ECF No. 34-16, Ex. Q, EEO Complaint January 29, 2013. On May 1, 2013, after considering an objection by the plaintiff to a previous acceptance of claims letter, the Agency sent Ms. Dunn an acceptance of claims letter that described her claim as alleging that (1) her being placed on a PIP, (2) her being subjected to a one-year probationary period following the PIP, and (3) her termination were all instances of retaliation for her earlier lawsuit against the Agency. ECF No. 45-17, Ex. R, Partial Acceptance of Claims Letter May 1, 2013, at 2. The letter dismissed the claim to the extent it was based on the PIP and one-year probationary period because the plaintiff had not contacted an EEO counselor within 45 days of those events, as required by the applicable regulations. However,

the Agency accepted the claim to the extent it was based on her termination. [2] *Id.* at 2–3. Several months later, on January 9, 2014, the Agency issued a Final Agency Decision that confirmed the dismissal of Plaintiff's untimely claims and found that the plaintiff failed to prove that her termination was retaliatory. ECF No. 34-18, Ex. S, Final Agency Decision (Jan. 9, 2014), at 3, 13.

After receiving the Agency's unfavorable decision, Ms. Dunn filed the present suit on February 10, 2014, again alleging that she was retaliated against for her prior lawsuit. ECF No. 1. The Agency now moves for dismissal in part under Rule 12(b)(1) and judgment as a matter of law.

## II. DISCUSSION

### A. Summary Judgment

Under Rule 56(a), the Court may grant summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden to show that there is an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The nonmoving party must "designate specific facts showing that there is a genuine issue for trial." *Id.* at 324. A fact is material "if under the substantive law it is essential to the proper disposition of the claim." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."

---

[2] The letter also found that any claim based on the one-year probationary period (1) was not raised during EEO counseling at all and (2) failed to state a claim; thus there were two additional, independent reasons for rejecting such a claim. ECF No. 45-17, Ex. R, Partial Acceptance of Claims Letter May 1, 2013, at 2–3.

*Anderson*, 477 U.S. at 248. The Court will examine the factual record and make reasonable inferences therefrom in the light most favorable to the party opposing summary judgment. *Concrete Works of Colorado, Inc. v. City and County of Denver*, 36 F.3d 1513, 1517 (10th Cir. 1994).

### B. Timeliness of Contact with an EEO Counselor

First, the Agency argues that Ms. Dunn's retaliation claim is barred in part by the applicable regulations because she did not contact an EEO counselor within 45 days of some of the alleged retaliatory acts, and thus she did not timely exhaust her administrative remedies.[3] Under the applicable regulations, "[a]n aggrieved person must initiate contact with a Counselor within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action." 29 C.F.R. § 1614.105(a)(1). "Because the EEO deadline serves as a statute of limitation, a plaintiff who does not contact an EEO counselor within the time period prescribed by these regulations is barred from bringing suit on the matter." *Albert v. Henderson*, 216 F. Supp. 2d 1171, 1174 (D. Colo. 2002). Moreover, "Supreme Court and Tenth Circuit law . . . require a claimant to file a charge within the appropriate limitations period as to each discrete act of retaliation."[4] *Marquez v. Johnson*, 545 F.

---

[3] The Agency's motion frames this failure to exhaust administrative remedies in a number of different ways, including (1) failure to file an administrative charge at all (as to the one-year probationary period), (2) failure to timely approach an EEO counselor, and (3) failure to challenge the Agency's framing of the issues, and argues that the first point goes to the Court's jurisdiction. ECF No. 33 at 12–14. The Court thinks the point is most straightforwardly addressed as a failure to timely raise a claim with an EEO counselor, and thus I analyze it as such under the summary judgment standard. For this reason, the Court declines to address the Agency's Rule 12(b)(1) argument.

[4] This is true even if the plaintiff alleges, as in the present case, that each discrete act is part of a larger pattern of discrimination: "Each discrete act of discrimination or retaliation is treated separately, and each must be the subject of a timely EEOC charge in order to exhaust administrative remedies, even though each discrete act might also be part of a larger pattern or practice of discrimination or retaliation. The sole exception to this rule is a hostile environment claim." *Carrero v. Arapahoe Cnty. Sheriffs Office*,

App'x 735, 738 (10th Cir. 2013). *See also Martinez v. Potter*, 347 F.3d 1208, 1210 (10th Cir. 2003) ("[E]ach discrete incident of such [retaliatory] treatment constitutes its own unlawful employment practice for which administrative remedies must be exhausted.").

Here, the Court agrees with the Agency that the claim is time-barred to the extent it is based on Ms. Dunn's being placed on a PIP and the extended probation period. As alleged in her complaint, plaintiff's retaliation claim is premised on three adverse employment actions: (1) being placed on a PIP on September 1, 2011, after receiving notice of the PIP on August 9, 2011, (2) being subject to an extended probation period following the PIP for an entire year, which she was informed of on November 17, 2011, and (3) being terminated on December 7, 2012, after receiving notice of the termination on November 30, 2012. ECF No. 11 at ¶¶ 14, 17, 23, 32, 33. The plaintiff first contacted an EEO counselor about the retaliation claim on December 26, 2012. ECF No. 34-16, Ex. Q, EEO Complaint January 29, 2013. Thus the first two alleged retaliatory acts listed above did not occur within 45 days of her contact with the EEO counselor; indeed more than a year elapsed between each of the acts and the initial contact with the counselor. *See* ECF No. 45-17, Ex. R, Partial Acceptance of Claims Letter May 1, 2013, at 2. The plaintiff therefore failed to exhaust her administrative remedies for the clam insomuch as it is based on the PIP and probationary period.[5] Accordingly, the Court enters judgment as a matter of law for the Agency on the plaintiff's claim to the extent it is premised on these two allegedly retaliatory acts.

---

No. CIVA05CV02414MSKCBS, 2006 WL 2594472, at *3 (D. Colo. Sept. 11, 2006) (internal citations omitted).

[5] Although "EEO deadlines are construed as statutes of limitation and as such are subject to waiver, estoppel and equitable tolling," *Albert v. Henderson*, 216 F. Supp. 2d 1171, 1174 (D. Colo. 2002), there is no evidence to suggest that any of these doctrines are applicable here.

### C. The Remaining Retaliation Claim

In light of the plaintiff's failure to timely contact an EEO counselor, she may proceed only on a claim based on her termination. Plaintiff's theory is thus that she engaged in protected activity under Title VII by filing and participating in a lawsuit alleging unlawful discrimination and, as a result, she was terminated from her position at the Agency. *See* 42 U.S.C. § 2000e-3(a) (prohibiting an employer from retaliating against an employee because the employee "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]."). In analyzing such a retaliation claim, the Court applies the three-part structure established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).[6] *Somoza v. Univ. of Denver*, 513 F.3d 1206, 1211 (10th Cir. 2008). Under the *McDonnell Douglass* framework, the plaintiff must first establish a prima facie case of discrimination. *Id.* "Should the plaintiff succeed in proving a prima facie case, the employer must provide a legitimate and facially non-discriminatory reason for its decision. Finally, if the employer satisfies this burden, the plaintiff must establish that the defendant's reasons were a pretext for discrimination." *Id.* (internal citations omitted). Here, the Court finds that even assuming *arguendo* that the plaintiff can prove a prima facie case of retaliation, the Agency has provided a legitimate reason for its termination decision, and the plaintiff cannot establish that this reason is pretextual.

---

[6] A plaintiff in a Title VII retaliation case may also proceed on the theory that retaliatory animus played a "motivating part" in the employment decision. *See Twigg v. Hawker Beechcraft Corp.*, 659 F.3d 987, 998 (10th Cir. 2011) (distinguishing direct/mixed motives approach and *McDonnell Douglas*/indirect approach). However, the plaintiff here has presented no evidence suggesting that retaliation for her earlier lawsuit played a motivating part in her termination (indeed, she has presented no evidence at all), and the Court finds nothing in the evidence the Agency has presented suggesting as much. Thus plaintiff cannot proceed on a direct/mixed motives theory here.

According to the Agency, Ms. Dunn was terminated because she failed to satisfy the Agency's performance quality requirements for her position. Specifically, her scores on the Agency's quality metric fell below the required level of 95% for the period from April 1, 2011 to June 30, 2011. ECF No. 34-8, Ex. I, PIP Memorandum September 1, 2011, at 1. As a result, the plaintiff was placed on a PIP, which she successfully completed on November 17, 2011. *Id.*; ECF No. 34-11, Ex. L, PIP Completion Letter November 17, 2011. However, the Agency made clear that she was required to maintain a successful score on the quality metric for an entire year from the start date of the PIP and warned that should her performance fall below this level during this period, she might be "reduced in grade, reassigned, or removed without being afforded an opportunity to improve." *Id.* Indeed, her performance did again drop below the acceptable level in April and June of 2012, and her "90-day average" for April, May, and June of 2012 was 94.7%. ECF No. 34-12, Ex. M, Gayle Dunn Failing Scores Memorandum April Through June 2012. As a result, her supervisor submitted an evidence packet to Human Resources for Ms. Dunn's termination, and the management official reviewing it made the decision to terminate her. ECF No. 34-4, Ex. E, Declaration of Ellen Stewart at ¶ 16; ECF No. 34-5, Ex. F, Declaration of Cynthia Kindred, at ¶¶ 11, 13. Thus, the Agency has provided a legitimate and non-retaliatory reason for the plaintiff's termination.

To avoid judgment as a matter of law in the Agency's favor, the plaintiff must establish that this explanation for her termination was a pretext for discrimination. She has failed to do so. "To show pretext, [a plaintiff] must produce evidence of such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and

9

hence infer that the employer did not act for the asserted non-discriminatory reasons." *Fye v. Oklahoma Corp. Comm'n*, 516 F.3d 1217, 1228 (10th Cir. 2008) (internal citations and quotations omitted). An employer is entitled to summary judgment if a plaintiff "fail[s] to produce any evidence from which a reasonable inference could be drawn that [the employer's] proffered reasons for her firing were pretextual." *Foster v. Alliedsignal, Inc.*, 293 F.3d 1187, 1196 (10th Cir. 2002) (internal citations and quotations omitted). In the present case, Ms. Dunn has failed to present any evidence from which a reasonable factfinder could infer that the Agency did not terminate her because of her poor job performance, nor does any of the evidence the Agency has presented suggest as much.[7] Although the plaintiff is pro se and the Court accordingly must liberally construe her response, her pro se status does not excuse her failure to present any admissible evidence in support of her claim. In sum, the plaintiff has offered nothing suggesting that the Agency's stated reason for her termination was pretextual, and the Court therefore grants the Agency's motion for summary judgment.

### III. ORDER

The Agency's motion for summary judgment [ECF No. 33] is GRANTED. This action and all claims therein are dismissed with prejudice.

DATED this 22nd day of May, 2015.

---

[7] The plaintiff alleged in her complaint that one of her supervisors, Stephen Morales, made comments to another supervisor stating that Ms. Dunn "thinks she has immunity because of that shit lawsuit she has" and that "her stats are going to be all jacked up." ECF No. 11 at ¶¶ 18–19. While the Agency apparently does not dispute, for the purposes of the present motion, that Mr. Morales made this statement, the evidence before the Court suggests that he meant that her "stats" would be "jacked up" because she was spending too much time away from the phone. ECF No. 34-1, Ex. B, Ellen Stewart Dep. Transcript, at 73:8–11. Moreover, it is clear that employees' scores were determined by members of the quality division after they reviewed randomly selected calls; the plaintiff's supervisors had no control over her scores. *Id.* at 16:2–8. Thus this statement does not persuade the Court that the Agency's stated reason for Ms. Dunn's termination was pretextual.

BY THE COURT:

_____

R. Brooke Jackson
United States District Judge

11